MICHAEL L. EVANS,

                Plaintiff,

v.                                                           Case No. 17-cv-983-pp

JOSEPH MANUEL, *et al.*,

                Defendants.

**ORDER GRANTING DEFENDANTS LUTSEY AND PETER'S MOTIONS FOR SUMMARY JUDGMENT BASED ON FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES (DKT. NOS. 34, 39)**

        The plaintiff, a Wisconsin state prisoner who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. Dkt. No. 1. On March 27, 2018, the court screened the plaintiff's complaint and allowed him to proceed with deliberate indifference claims against (1) Dr. Joseph Manuel, based on his allegations that Dr. Manuel persisted in a course of treatment that he knew was ineffective to address the plaintiff's complaints of pain; (2) Jean Lutsey, based on his allegations that in July or August of 2016, she canceled a doctor-ordered surgery; and (3) Susan Peters, based on his allegations that in June 2017, she provided him with pain medication that she knew was inadequate to address his needs. Dkt. No. 12 at 6-7.

        Defendants Lutsey and Peters have moved for summary judgment, arguing that the plaintiff failed to exhaust the available administrative remedies on his claims against them. Dkt. Nos. 34, 39. Dr. Manuel concedes

that the plaintiff has exhausted the available administrative remedies as to the plaintiff's claim against him. Dkt. No. 35 at 1, n.1. The court will grant Lutsey and Peters' motions for summary judgment and will dismiss them as defendants.

I. **FACTS**[1]

The plaintiff explains that he suffers from extreme pain and numbness on the left side of his body due to degenerative disc disease. Dkt. No. 1 at 2; Dkt. No. 46 at ¶2. He says that sometime in July or August 2016, Dr. Sauvey (who is not a defendant) ordered surgery to help address the plaintiff's pain. Dkt. No. 1 at 2. The plaintiff says that around the same time that Dr. Sauvey ordered the surgery, defendant Lutsey (the manager of the Health Services Unit) "denied" Sauvey's recommendation and ordered advanced pain therapy instead. Id. This is the only allegation the plaintiff made against Lutsey.

The plaintiff also asserts that, on June 14, 2017, defendant Peters (a nurse practitioner) treated the plaintiff's complaint that he was in pain "as if it was a common cold," and just prescribed him over-the-counter medication. Dkt. No. 1 at 2. This is the only claim the plaintiff made against Peters.

---

[1] The court takes the facts in this section from "Defendants' Proposed Findings of Fact in Support of Motion for Partial Summary Judgment on Exhaustion Grounds," dkt. no. 36, "Defendant Susann Peters, NP's Proposed Findings of Fact in Support of Motion for Summary Judgment on Exhaustion Grounds," dkt. no. 41, the plaintiff's declaration, dkt. no. 46, and the plaintiff's sworn complaint, dkt. no. 1, which the court construes as an affidavit at summary judgment. Ford v. Wilson, 90 F.3d 245, 246-47 (7th Cir. 1996). The plaintiff did not respond to the defendants' proposed findings of facts, so those facts are deemed admitted for the purposes of summary judgment. See Civil L.R. 56(b)(4).

2

The plaintiff filed two inmate complaints in October 2016: GBCI 2016-22640 and GBCI 2016-23857. Dkt. No. 36 at ¶2; Dkt. No. 41 at ¶2. In inmate complaint 22640, the plaintiff complained that "H.S.U. staff stopped [his] Gabapentin (pain) without telling [him] . . . ." Dkt. No. 37-2 at 7. In inmate complaint 23857, the plaintiff complained that he was not receiving physical therapy as prescribed by Dr. Allen (who is not a defendant). Dkt. No. 37-3 at 6. Neither inmate complaint mentions cancellation of the surgery Dr. Sauvey had ordered, neither mentions Lutsey, and both predate the plaintiff's allegations about Peters by about eight months. Dkt. No. 36 at ¶2; Dkt. No. 41 at ¶2. The inmate complaint examiner (ICE) dismissed both complaints. Dkt. No. 36 at ¶3. The plaintiff did not appeal those dismissals. Id.

On May 21, 2017, the plaintiff prepared inmate complaint GBCI 2017-13286, in which he stated the following:

> H.S.U lack of treatment is causing suffering and emotional confusion . . . .
>
> I put a H.S.U. request in to see a doctor due to my chronic illness worsen[ing]; . . .
>
> I was s[een] by H.S.U 5-15-17, and told there was no medical-Doctor here no more and I would be put on the list to see a medical
> Ddoctor in 3 weeks, that['s] not going [to] work . . . .
>
> I have been experienc[ing] numbness all this year, from my neck, left shoulder, left arm and hands, left leg & toes, I wake up feeling paralyze[d], and when I write, within 30 minute[s] or so my neck & whole left side go numb. On 5-13-17, I put my 3rd or 4th request in H.S.U since April, regarding numbness experience, and H.S.U, have disregarded my medical issue as "cry me a river," because of H.S.U lack of treatment – regarding my degenerat[iv]e disc disease, and damage[d] nerve, I have been experienc[ing] numbness,

> extreme pain through out my neck, left shoulder, left arm, left leg. I have experience[d] numbness during 2nd shift and 1st shift, and was told by Clos that H.S.U, said put a request in to be seen, because I am not dying, H.S.U is depriving me of adequate medical treatment, and making me depress[ed]. I have been patien[t] with H.S.U over a year, and this issue happened in April 2015. I had to push the issue with I.C.Es in late 2015 just to have M.R.Is, which show I was suffering from far worse illness, now I'm enclosing #3 H.S.U correspondence with H.S.U since April, every time I see H.S.U, it the same thang, we can't do nothing else . . . .

Dkt. No. 37-4 at 11-12.

The reviewing authority dismissed that complaint on June 21, 2017. Id. at 4. The plaintiff timely appealed that dismissal. Id. at 25-26. In his appeal, the plaintiff wrote, "H.S.M. Lutsey stop[ped] Dr. Mary Sauvey from sending me out for surgery to help rel[ie]ve some of the pain in my neck . . . ." Id. at 26. He also asserted that, "[he] never [saw] ACP til 6-14-17, the same day, that ICE – A. DeGroot, dismiss[ed] [his] complaint, which clearly shows a lack of concern & poor judgement to my medical illness." Id.

## II. DISCUSSION

### 1. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute

4

over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

   2. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides in part that "[n]o action shall be brought with respect to prison conditions under § 1983. . . by a prisoner. . . until such administrative remedies as are available are exhausted." 42 U.S.C §1997e(a). The exhaustion rule gives prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court, and it produces a "useful administrative record" for the district court to rely on. Jones v. Bock, 549 U.S. 199, 204 (2007) (citing Woodford v. Ngo, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency because agencies generally resolve claims much faster than

5

federal courts. Woodford, 548 U.S. at 89. A district court "lacks discretion to resolve the claim on the merits" if the prisoner fails to properly exhaust administrative remedies. Perez v. Wis. Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner must "properly use the prison's grievance process" prior to filing a case in federal court. Id. "[A] prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). "[I]t is the prison's requirements . . . that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

To exhaust administrative remedies through Wisconsin's Inmate Complaint Review System (ICRS), an inmate first must file an offender complaint with the inmate complaint examiner (ICE) within fourteen calendar days of the event giving rise to the complaint. §DOC 310.09(6).[2] The complaint must "contain only one issue per complaint, and shall clearly identify the issue." §DOC 310.09(1)(e). An inmate complaint sufficiently identifies the issue if it "alerts the prison to the nature of the wrong for which redress is sought." Strong v. David, 297 F.3d 646, 560 (7th Cir. 2002). "The grievant need not lay

---

[2] On April 1, 2018, a new version of Wis. Admin. Code §DOC ch. 310 went into effect, affecting the numbering of various provisions. For purposes of this decision, the court refers to the Register, December 2014 version, which was in effect at the relevant time.

6

out the facts, articulate legal theories, or demand particular relief." Id. The inmate complaint does not need to name all names, or lay out every possible legal theory. Wine v. Pollard, No. 08-CV-173-BBC, 2008 WL 4379236, at *2 (W.D. Wis. Sept. 23, 2008). But the complaint must "alert[] the prison to the nature of the wrong." Id. at 3.

   3.   Analysis

Under the Prison Litigation Reform Act (PLRA), courts must screen complaints filed by incarcerated individuals to identify the claims that a plaintiff may proceed with. When making that determination, the court is limited to the allegations in a plaintiff's complaint. In other words, the facts that the plaintiff chooses to allege in his complaint limit the claims he may litigate. A court will construe a *pro se* plaintiff's allegations broadly. However, when a plaintiff limits the allegations in his complaint to a specific event or to a specific date, the claims on which the court will allow him to proceed will be limited to that event or date. A plaintiff cannot expand his claims by introducing broader allegations later in the case. If a plaintiff wants to proceed on additional or broader claims, he must ask for permission to amend his complaint to include additional allegations.

The plaintiff's complaint in this case made specific allegations of wrongdoing by Lutsey and Peters. He alleged that sometime in July or August of 2016, Lutsey "denied" the surgery ordered by Dr. Sauvey, and gave him advanced pain therapy instead. Because the plaintiff limited his allegations against Lutsey to that single event, the plaintiff's deliberate-indifference claim

7

is limited to that single event. He can't now pursue a claim that Lutsey was deliberately indifferent because she allegedly denied him medication or ignored his complaints, because he did not make that claim in the complaint. To proceed against Lutsey, the plaintiff must show that he exhausted the available administrative remedies by alerting his institution that Lutsey had denied Sauvey's order of surgery and replaced it with advanced pain therapy.

None of the plaintiff's inmate complaints make any mention of Lutsey canceling, or denying, a doctor-ordered surgery. The plaintiff argues, however, that the allegations he made in inmate complaint GBCI 2017-13286 were broad enough to put the institution on notice about that particular event.

Inmate complaint 13286 is dated May 21, 2017. In it, the plaintiff stated that he had been experiencing numbness "all this year"—presumably, either the year 2017, or the one-year period from May 2016 through May 2017. Dkt. No. 37-4 at 11. He also referred to three or four health services requests that he had submitted since April 2017. The plaintiff emphasized that his condition was worsening and that he was seeking help because of increased wait times due to the institution no longer employing an on-site doctor (which was a relatively recent development). Although the plaintiff stated that "this issue happened in April 2015," and argued that he had to "push the issue with I.C.Es in late 2015 just to have M.R.Is which show[ed] [he] was suffering from far worse illness," the plaintiff said nothing about Sauvey having ordered surgery for him in the summer of 2016, and said nothing about the fact that

8

that surgery did not take place, or about anyone denying him the surgery or canceling the surgery.

Inmate complaint 13286 alerted the plaintiff's institution that (1) he had an issue in April 2015; (2) he filed complaints in late 2015 which resulted in getting M.R.I.s; (3) from possibly the spring of 2016 until May 2017, he'd been having numbness; (4) he'd put in several complaints since April 2017; and (5) the numbness issues were getting worse. Nowhere—not in the inmate complaint, not in the health services requests, not in the informal complaints directed to health services—does the plaintiff mention the doctor-ordered surgery from 2016, or his allegation that Lutsey canceled it. There is no evidence to support the plaintiff's argument that ICE was on notice about the allegedly canceled surgery.

Even if the plaintiff had mentioned the allegedly canceled surgery, he wrote inmate complaint 13286 on May 21, 2017—almost a year *after* he says Lutsey denied him the surgery. The IRCS procedures require inmates to file their complaints within fourteen days after the event that gives rise to the complaint. If the plaintiff had wanted to complain about Lutsey canceling a surgery in July or August 2016, he should have filed his inmate complaint by September 2016, at the latest.

While the plaintiff does mention the allegedly canceled surgery in his June 2017 appeal from the denial of inmate complaint 12386, the Wisconsin Administrative Code provides that an inmate must clearly identify the issue in the *original* inmate complaint that he presents to ICE, because ICE—not the

authority that reviews an appeal—is responsible for investigating and determining the facts. ICE did not have the opportunity to investigate and determine the facts regarding the plaintiff's claim that Lutsey canceled a doctor-ordered surgery because the plaintiff did not raise the issue in his original inmate complaint. Because the plaintiff did not follow the prison's rules for filing a grievance, he failed to properly exhaust administrative remedies on his deliberate-indifference claim against Lutsey, and the court will dismiss his claim against Lutsey.

The court will dismiss the plaintiff's deliberate-indifference claim against Peters for the same reason. The plaintiff alleges in his complaint that Peters gave him over-the-counter pain medication to treat his complaints of pain. The plaintiff alleges that this occurred on June 14, 2017. The plaintiff filed all three of his inmate complaints *before* that date, so those complaints could not have alerted ICE to Peters' alleged misconduct. The plaintiff does reference this event in his June 2017 appeal, but again, the Wisconsin Administrative Code requires inmates to identify the issue in the original inmate complaint so that the ICE can investigate them. The plaintiff failed to properly exhaust administrative remedies on his deliberate-indifference claim against Peters, and the court will dismiss his claim against Peters.

That said, the court acknowledges the plaintiff's assertions that he has limited education and no legal training. See Dkt. No. 13. It also acknowledges that litigation is not a game of "gotcha," where an inexperienced plaintiff's claims fail because of technical violations of complicated rules and procedures.

In his federal complaint, the plaintiff refers generally to ineffective treatment he received from health services staff in response to his persistent complaints of pain. The plaintiff does not, however, name the members of the HSU staff who ignored him, or who provided him with ineffective treatment. An individual is liable under §1983 only if he or she was personally responsible for the alleged constitutional violation. Although the plaintiff alleged that he was denied adequate treatment by health services staff, his allegations did not clarify who in health services denied him that treatment, so the court did not allow him to proceed on claims in connection with those broader allegations.

The court will give the plaintiff the opportunity to file an amended complaint that contains all his allegations against all the individuals he claims violated his constitutional rights. The plaintiff must be specific about *who* allegedly violated his constitutional rights. It is not enough for him to refer to "health services staff" or "nurses;" he must identify each person that allegedly ignored his complaints of pain or refused to adequately treat him. If he does not know a person's name, he may refer to that person as "John Doe nurse" or "Jane Doe HSU staff," but he still need to provide enough detail to help identify the person: When did the person violate his rights? What job did the person have? Was the person male or female? Did the person work a particular shift? If the court allows the plaintiff to proceed on a claim against a Doe defendant, he can use discovery to learn the real name of that defendant. The court reminds the plaintiff that in the amended complaint, he may raise only those claims that he has exhausted through ICRS.

The court is including with this order a blank complaint form. If the plaintiff wishes to file an amended complaint, he must write the word "AMENDED" next to "COMPLAINT" at the top of the first page. He must write the case number for this case—17-cv-983—in the field for "case number." The amended complaint must be complete on its own; the plaintiff cannot just refer the court to facts he alleged in the original complaint. The amended complaint takes the place of the original one, so it must include all the facts that support all the claims the plaintiff wants to bring.

If the plaintiff chooses to file an amended complaint, he must do so in time for the court to receive it by the end of the day on **Friday, March 8, 2019.** The court advises the plaintiff that if he files an amended complaint, the case essentially will start over, which will significantly delay the resolution his claims.

The plaintiff is not *required* to file an amended complaint; if he wants to, he simply can proceed on his remaining claim against defendant Dr. Manuel. If that is what the plaintiff wishes to do, he can—at any time before March 8, 2019—file a short motion to proceed on the original complaint. The motion need only to tell the court that he does not want to file an amended complaint, and wants to proceed on the original complaint.

Finally, on November 19, 2018, the court vacated the dispositive motion deadline, noting that it would set new deadlines for completing discovery and filing dispositive motions after it had ruled on Lutsey and Peters' motions for

summary judgment. The court will set new deadlines once it learns whether the plaintiff will file an amended complaint or proceed with his original complaint.

## IV. CONCLUSON

The court **GRANTS** defendants Lutsey and Peters' motions for summary judgment for failure to exhaust administrative remedies. Dkt. Nos. 34, 39. The court **DISMISSES** Lutsey and Peters as defendants.

The court **ORDERS** that the plaintiff either must file an amended complaint or a motion to proceed with the original complaint in time for the court to receive it by the end of the day on **March 8, 2019**.

Dated in Milwaukee, Wisconsin this 1st day of February, 2019.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**
