UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL L. EVANS,

                      Plaintiff,

v.                                           Case No. 17-cv-983-pp

MANUEL JOSEPH,

                      Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION TO CORRECT DECLARATION (DKT. NO. 68), GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 58) AND DISMISSING CASE**

The plaintiff, who is representing himself, filed this lawsuit under 42 U.S.C. §1983. Dkt. No. 1. On March 27, 2018, the court allowed the plaintiff to proceed on claims against Dr. Manuel Joseph, Jean Lutsey and Susan Peters based on his allegations that they were deliberately indifferent to his neck and back pain. Dkt. No. 12. On February 1, 2019, the court granted summary judgement in favor of Lutsey and Peters and dismissed them from the case because the plaintiff had failed to exhaust the available administrative remedies before he sued them. Dkt. No. 53.

Dr. Joseph had conceded that the plaintiff had exhausted the available administrative remedies as to the plaintiff's claims against him, so the court's order dismissing Lutsey and Peters did not impact the plaintiff's claims against Joseph. A week after the court dismissed Lutsey and Peters, the plaintiff confirmed that he wanted to proceed against Joseph based on the allegations

1

in his original complaint. Dkt. No. 54. The court granted the plaintiff's request to proceed. Dkt. No. 55. On May 10, 2019, Dr. Joseph moved for summary judgment. Dkt. No. 58. That motion is fully briefed and ready for the court's decision.[1] The court will grant the defendant's motion and dismiss this case.

## I. RELEVANT FACTS

During the events alleged in his complaint, the plaintiff was a Wisconsin inmate housed at Green Bay Correctional Institution. Dkt. Nos. 60 at ¶1; 66 at ¶1. The Wisconsin Department of Corrections employed Dr. Joseph as physician in the health services unit at GBCI from November 2016 until April 28, 2017. Dkt. Nos. 60 at ¶2; 66 at ¶2. Dr. Joseph no longer works for the Department of Corrections. Id.

Evans was under Dr. Joseph's care for a little more than two months, from February 24, 2017 until April 28, 2017. Dkt. No. 60 at ¶3. According to Dr. Joseph, he entered his first order for the plaintiff on February 24, 2017, in response to the plaintiff's complaints of back pain. Id. Dr. Joseph states that he prescribed muscle rub to use daily, as needed, for six months. Id. The plaintiff disputes that Dr. Joseph ordered muscle rub for him; he states that he already had muscle rub. Dkt. No. 66 at ¶3.

---

[1] On July 24, 2019, the plaintiff filed a motion to correct some dates in the declaration he had filed about a week earlier. Dkt. No. 68. The court will grant that motion.

2

On March 3, 2017, Dr. Joseph met with the plaintiff for the first and only time. Dkt. Nos. 60 at ¶¶4, 5; 66 at ¶¶4, 5. They discussed the plaintiff's medical history, including his back and neck pain. Id. The plaintiff reported to Dr. Joseph that the medication he had been taking was not helping his pain. Dkt. Nos. 60 at ¶6; 66 at ¶6. Dr. Joseph discontinued the medication and prescribed Naproxen and Tylenol in its place to help the plaintiff with his back pain. Id.

The plaintiff informed Dr. Joseph that his TENS unit (a device that provides low voltage electric current) was providing some relief, so Dr. Joseph advised that the plaintiff continue to use it. Dkt. Nos. 60 at ¶¶7, 8; 66 at ¶¶7, 8. Dr. Joseph also recommended that the plaintiff use a back brace and have an additional three to four physical therapy appointments. Dkt. No. 60 at ¶8. Another doctor (Dr. Allen) already had recommended that the plaintiff have an advanced pain therapy consultation; that appointment was scheduled for April 21, 2017. Dkt. No. 60 at ¶9. Advanced Pain Management could provide injections, which, according to the plaintiff, would provide relief for about three to five days before wearing off. Dkt. Nos. 60 at ¶9; 66 at ¶9.

On April 20, 2017, staff informed health services, which informed Dr. Joseph, that the plaintiff was misusing his order for ice. Dkt. No. 60 at ¶11. Dr. Joseph discontinued the plaintiff's ice that same day. Id. The plaintiff asserts that officers in the restricted housing unit were "withholding medical" (the

3

court assumes the plaintiff means medical ice) to harass inmates. Dkt. No. 66 at ¶11.

The next day, on April 21, 2017, the plaintiff was seen offsite by a nurse practitioner at Advanced Pain Management. Dkt. Nos. 60 at ¶12; 66 ¶12. There, he was evaluated and given information about cervical spine steroid injections to address his pain (he received injections for his back pain about three months later, on August 1 and 10, 2017). Dkt. Nos. 60 at ¶¶12, 19; 66 ¶¶12, 19. On April 25, 2017, Dr. Joseph reviewed Advanced Pain Management's recommendation and wrote an order to provide the plaintiff with Voltaren gel, a topical medication used to relieve joint pain, as needed for four months. Dkt. Nos. 60 at ¶13; 66 at ¶13. Dr. Joseph did not see the plaintiff or enter any orders for his care after April 25, 2017. Dkt. Nos. 60 at ¶14; 66 at ¶14.

## II. DISCUSSION

### A. *Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute

over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B.  *The Court's Analysis*

"[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." Gabb v. Wexford Health Sources, Inc., No. 18-2351, 2019 WL 2498640, at *3 (7th Cir. June 17, 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks 1) "whether a plaintiff suffered from an objectively serious medical condition" and

5

2) "whether the individual defendant was deliberately indifferent to that condition." Id. (quoting Petties v. Carter Petties v. Carter, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)).

The defendant concedes for purposes of summary judgment that the plaintiff's back and neck pain constituted an objectively serious medical condition. Dkt. No. 59 at 10, n.6. Accordingly, the parties focus their arguments on whether the defendant was deliberately indifferent to that condition. "'[D]eliberate indifference' requires a 'subjective state of mind' somewhere between negligence and intention." Gabb, 2019 WL 2498640, at *3, quoting Petties v. Carter, 836 F.3d 722, 727-28 (7th Cir. 2016). For a plaintiff to show that a defendant was deliberately indifferent to his condition, he must "provide evidence that [the defendant] *actually* knew of and disregarded a substantial risk of harm." Id.

The plaintiff explains that he was "diagnosed in 2016 with degenerative disc disease" and that "he suffers from constant pain." Dkt. No. 65 at 2. He admits that the defendant prescribed him an order for muscle rub, examined him, reviewed his medical history, discontinued the ineffective medication, prescribed new medication, recommended a back brace and additional physical therapy, reviewed the recommendations of Advanced Pain Management and wrote him an order for the Voltaren gel. Id. He asserts, however, that the defendant should not have prescribed him anything without seeing him (even though the defendant was going off of the Advanced Pain Management notes

6

when he prescribed the Voltaren gel). Id. at 5. He also argues that the defendant saw him only once, which wasn't enough for the defendant to determine a treatment plan. Id. at 5-6. The plaintiff questions how the defendant could know that the course of action the defendant chose was proper when he saw the plaintiff only once, and allegedly didn't examine him, only talked with him. Id. at 6. The plaintiff asserts that the defendant's "deliberate denial in medical treatment, adequate treatment was beyond the professional norms of the Eighth Amendment requirements." Id.

The plaintiff disagrees with the course of treatment the defendant provided in the approximately two months the plaintiff was under his care. But "a 'mere disagreement with the course of [the inmate's] medical treatment [does not constitute] an Eighth Amendment claim of deliberate indifference.'" Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996), quoting Warren v. Fanning, 950 F.2d 1370, 1373 (8th Cir. 1991)).

The plaintiff also argues that the treatment the defendant gave him was so ineffective that it was sub-standard. But "'[a] medical professional is entitled to deference in treatment decisions unless "no minimally competent professional would have so responded under those circumstances."'" Campbell v. Kallas, 936 F.3d 536, 545 (7th Cir. 2019), quoting Sain v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2008)). A prison medical professional is not liable for deliberate indifference unless the treatment he prescribes is "such a substantial departure from accepted professional judgment, practice, or

7

standards[] as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id.

The plaintiff has presented no evidence to demonstrate that the defendant's efforts to relieve his neck and back pain constituted a substantial departure from accepted medical judgment or practice. In fact, he presents no evidence suggesting that *any* course of treatment would have provided him relief from his chronic pain. See Gabb, 2019WL 2498640, at *4. The plaintiff's own facts indicate that *nothing* helps his pain. The plaintiff asserts that steroid injections (which he received months after the defendant stopped treating him) did not work, that his TENS unit eventually stopped being as effective, that medications and gel did not help, and that physical therapy caused him even more pain. Dkt. Nos. 66 at ¶¶6, 7, 9, 13, 15; 65 at 2-3. Given that, no jury could reasonably find that the defendant's action or inaction harmed the plaintiff.

As the Seventh Circuit explained, "The lack of evidence of what the 'better' treatments were and whether they would have been effective would leave a jury entirely to its own imagination about what could have been done. Such unmitigated speculation cannot defeat summary judgment." Gabb, 2019WL 2498640, at *4 (citing Austin v. Walgreen Co., 885 F.3d 1089 (7th Cir. 2018)). Because the plaintiff has no evidence to support a conclusion that the defendant could have pursued treatment that would have reduced or resolved the plaintiff's neck and back pain, no jury could find that the defendant's

8

actions (even if they amounted to deliberate indifference, which they did not) harmed the plaintiff. The plaintiff suffers from chronic, severe pain. But the evidence does not support a conclusion that the defendant was deliberately indifferent in trying to relieve that pain, and no reasonable jury could conclude that the actions the defendant took (or didn't take) harmed the plaintiff. The defendant is entitled to summary judgment.

## III. CONCLUSION

The court **GRANTS** the plaintiff's motion to correct typographical errors in his declaration. Dkt. No. 68.

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 58. The court **DISMISSES** this case and will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry

of judgment. The court cannot extend this deadline. <u>See</u> Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 30th day of October, 2019.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**